A sex offense-specific assessment involves a psychologist interviewing a person about his entire sexual history, all of his history from the time of the original offense through his current practices. It asks questions about the person's desires. It examines whether there is any potential deviancy. It asks questions of the most intimate sort. But, counsel, didn't we say in Johnson that an assessment is far less onerous than a treatment condition? I begin my comments there because, yes, Johnson did say exactly that. What I'd like to point out, though, is that the assessment itself is a significant deprivation. The treatment that might flow from that assessment is a greater restriction on liberty. But that's purely speculative at this point. If the person were ordered to conduct, to participate in treatment, yes. If the assessment recommended it, though, it would then be ordered. But we don't know that right now. We don't. And your client, if it were, if there were an assessment and it were ordered, you would have an opportunity to request that the court disagree with the assessment and not actually order the condition. In other words, you cannot go in and ask for a revision of the conditions. I believe that opportunity would be there, but I think the chances of that changing would be remote. There would have to be conflicting evidence other than the treatment provider that had been assigned by probation. But, yes, that's correct. That would be a possibility. And we review for abuse of discretion? Yes. Okay. Ms. Vecchero, there were continuous problems with the registration of Mr. Hohag, weren't there? There was not. I would not say there were continuous problems. Mr. Hohag registered. Frequent. Frequent. No, he registered consistently until 2013 when he left the state of Washington. He moved to California, and then he moved to Oregon. So he did not register between 2013 and his arrest in 2015. Well, he was obligated to register, was he not? He was, and that's why he pled guilty to the offense. And don't you think the supervised release was reasonably related to that? I believe supervised release was, but not the special conditions, Your Honor. I mean the special condition, the supervised release. Here was a person who was not complying with the registration laws, and it was reasonable to wonder if he had reverted to original problems. It's certainly reasonable to wonder, but I think that on the basis of the record before the district court, the conditions were not reasonably related in that he was then 44. He had not offended since he was 16 years old, and between being 16 and 44, he had never committed another felony other than the SORNA violation before the court. He did not have any substance abuse problem. He had not. But failure to register is a violation. That's correct. Other than the felony that was before the court, he had no other felonies in his record since the age of 16. Counsel, I know this is a fine point, perhaps, but you say he committed no other offenses. He was never arrested or convicted. But do we know in terms of his actual behavior whether, in fact, he did not commit any further acts that would have been criminal? The only method I know of whereby a person can prove that to the court is by submitting to a polygraph examination, and Mr. Hoyg did do that. The evidence of that is in our exhibits of record about the past polygraph exam on the question of whether he had engaged in any sexual conduct with a minor since the time of his Washington offense, and he was found to be truthful in response to his denial of having done anything of the sort. So I think there was evidence in the record where the court could see that. The court did not have that record in Johnson or in many of the other cases that the court has considered on these SORNA violations. What does an assessment entail? The sex offender-specific assessment entails a psychologist questioning a person about his entire sexual history, his sexual practices, the things, the sex he then engages in, all of the sexuality he's engaged in in his entire life. I think it's the kind of conversation that no human being wants to have. Is it done at his home? It's done at a psychologist's office. And it's not an inpatient-type thing? No, it doesn't last long enough to be an inpatient thing. How long does the whole process take? I think it's a day's appointment, in my experience, of interviews and standardized testing, and then if there's further recommendations from that, then further appointments can follow. Counsel, following up on my colleague's question, you're talking about a test, if you will, to try to get some sense of where he is at this point. He's shown by his failure to register when he moved twice that he finds this registration offensive and difficult. Why is the failure to why is registration itself any more difficult than what this condition asks him to do? I don't believe that registration itself is difficult. So he was. Well, the consequences of it. He worried about the consequences of it, right? He certainly is now worried about them. Part of the history here also is that when he was originally convicted, the registration requirement did not last a lifetime as it does now. They did warn him of that. They changed the length of the registration period, and they had notified him of that, but it was different from when he was first convicted. I think that he registered for 13 years in Washington, and when he moved, I think, and that's exactly why he pleaded guilty, and he was punished for that, is that he had a reaction of being fed up that was not appropriate, and he was changing his life, and he didn't register. So that was criminal conduct, but it's criminal conduct of a very different sort than what the predicate offense was that had happened 27 years earlier, Your Honor. I respect that fact, but I guess like my colleague, when I look at Johnson, it seems to suggest in that case there was a single condition. It seems to suggest that his failure to register, which was related to the sex offense, takes it well beyond the 27-year-old offense and makes it a reasonable, at least the nexus is there, in requiring this evaluation. They're trying to protect the public. That's another reason for the registration. I guess I find it difficult to be too troubled by the failure to register and tying it to this new requirement. Tell me why I'm wrong. I think that the logic this Court offered us in TM, that a remote conviction without sufficient intervening factors is not enough to find the reasonable relation standard that one has to find for the statute. Except in TM, the underlying crime was not related to a sex offense, and here the failure to register as a sex offender is a crime related to a sex offense. Plus, TM, I think, involved treatment and not merely assessment. That's correct, but the drug offense that TM was convicted of that was before the Court and also then his violation conduct, he had twice been found in violation of his supervised release, I think shows at least as much disdain for the law as the offense of failing to register. But it isn't a matter of just disdain for the law. The district court in this case explained precisely why the assessment was related to the offense conduct, which it was missing in TM. I believe that the district court in this case simply said that it's because he was convicted of failing to register. And he had no particular concern that Mr. Hoyg presented any kind of difficulty to the community. He just wanted to be sure. And I don't think the statutory framework is permitting such an intrusive condition simply to make sure that the Court is correct in finding the person generally law-abiding. Did you want to save a little rebuttal time? I saw you eyeing the clock. Yes, I would. Okay. Thank you. May it please the Court. Amy Potter on behalf of the United States. In this case, Judge Simon was faced with someone who did have an older sex offense, but who had failed to register repeatedly and gave the only excuse of I'm too busy. But he wasn't too busy to move twice, to find a job, to go to school, to make sure his wife had Social Security benefits. So even though Judge Simon was sympathetic to his situation and opted not to incarcerate him, Judge Simon did have concerns. And I know there was a mention of the polygraph, but Judge Simon specifically, and I believe it's at ER 17, acknowledged the government's argument that it was a very limited polygraph. It was a single question, and indeed in TM there was two questions in that polygraph. Not only was there a question about sexual conduct, but in TM, TM also passed the question about had he had any sexual desires about children, which I think the Court found significant in TM. He had passed that. So in this case, Judge Simon, faced with a single question polygraph, an unknown history for a period of years when he hadn't registered, decided that, you know, given the entire package, a sex offender assessment was appropriate. I think Judge Simon was honest. He hopes it comes back as nothing and there's no further conditions. But looking at the community, the protection of the community, Judge Simon decided this minimal intrusion, which this Court has recognized, it's very different. Sotomayor, let me ask you about that. Johnson does say that an assessment is far less intrusive than a treatment program. It's like the difference between getting a chest X-ray and then getting chemotherapy for lung cancer. But the opposing counsel has argued that it isn't minimally intrusive and we don't really know much from Johnson about what specifically was involved. What's your response to that argument? Well, I think counsel, as my understanding has described it correctly, it's a series of interviews. In some cases, it also involves a polygraph as part of the assessment where they're asked a series of questions. I think it's more intrusive than some of the very standard conditions, but it is tethered to the underlying sex offense, much like a fraud defendant has to produce bank account records and credit reports, which are also more intrusive than the average, but it's tethered to that fraud conviction. Here we have something that does not require, I think, the same level of findings or the same history as the sex offender conditions, but it is something, and I think the Judge Simon here did tie it to not only the underlying conviction, but given the history and sort of the unknowns, the defendant's excuse, I'm too busy, he decided for the protection of the public and, frankly, to offer probation all the tools it needed to effectively supervise this defendant, who's going to be supervised for five years, let them know what resources does this defendant need. Maybe he doesn't need any additional resources, but maybe he does. And this assessment allows both the district judge and probation to figure that out. Kennedy. Doesn't the fact that the requirement that he registers a sex offender and this rather minimal exam have the same requirement, same underlying basis, that is, to protect the public? Aren't they the same? They are the same. I mean, the basis or the reason for the sex offender registry is the protection of the public. And this just goes hand in hand with that. He hadn't registered for a period of years. He received a Federal felony conviction, and the Court decided in the interest of public protection it would order this assessment. Again, I think the Court is absolutely correct. If the assessment comes back and it recommends additional conditions, then there would likely be a court hearing. I mean, the defendant could, I guess, agree without a court hearing to the conditions, but the defendant would have to agree or the Court could revisit them. And he can certainly argue that they are unnecessary at that point. Unless the panel has any further questions, Judge Simon did not abuse his discretion in deciding that for the protection of the public this assessment was appropriate. Thank you. Thank you, Counsel. Ms. Ferchero, you have about a minute and a half. Thank you. Two points in rebuttal, if I may. One is that the third consideration the Court must engage in in imposing a special condition is also considering the recommendations of the Sentencing Commission. It's noted in the briefing that this special condition of sex offender assessment and treatment is not recommended for SORNA violations by the Sentencing Commission. They've exempted that from the recommendations for offenses that are actually sex offenses. So I think that's something also that the District Court would consider. So if this Court is of a mind to believe that a SORNA offense by itself is sufficient, that does not appear to be the view of the Sentencing Commission. Second, because of the language in Johnson, it's, I think, easy to say that an assessment is really only a light requirement, and that is certainly true, as Judge Graber noted, in comparison to treatment. But I would like the Court to consider that I think most humans would more quickly submit to a search of their car, for example, or even their pockets, than sit through a day of answering questions about their sexual practices. It's an extremely... That may be true, but, for example, if someone had run over a child and accidentally killed the child and later on were examined for other parts of a driving record, it would be very uncomfortable. But the reality is what was done before, the Court wants to be sure it's not going to happen again. And what the Court required here clearly is tethered to what happened before and his failure to comply with his obligation to register. And to pick up on Judge Smith's point, and I'm looking at the sentencing comments of the judge on page 35 of the transcript. That said, although I have every belief that this defendant is generally law-abiding, I understand the misdemeanors that have taken place. I just want to ensure that there is no risk to the community that might somehow have been indicated by the failure to register. And that's why I'm ordering the special conditions requested by probation. So that's a finding by the judge that even though the original offense is quite old, the failure to register is an immediate problem and it's reasonably related to the assessment. And is there an abuse of discretion with regard to that finding? And I see I'm out of time. If I may respond to your question. Please. I think there is an abuse of discretion based on the logic of this Court's other cases about what's required for special conditions. It's related in that a SORNA violation only exists because somewhere in history there had been a sex offense, but not reasonably so when the rest of the context shows who this person is and how he's been living. He wasn't hiding. He was living in the open under his name. He was found quite easily when the authorities wanted him. He had been married for six years. He had no substance abuse history. The only legal problems he had in between were misdemeanors, and even of those, the oldest one was eight years old. It is related in the abstract, but according to this Court's case law, not reasonably so because of the level of intrusion on the person's liberty. The other standards of his supervision, the other conditions of his supervision permit the probation office to monitor his progress in the community. He has many standard conditions on him. The question is just whether these special ones were warranted. And simply to satisfy the curiosity of whether there was any trouble in the intervening 27 years when there's been a truthful polygraph and no other indication of that trouble, I think is an abuse of discretion. Thank you, Counsel. Thank you. The case just argued is submitted, and we very much appreciate the helpful arguments from both counsels.
judges: Graber, M. Smith, Hellerstein